United States District Court
Southern District of Texas
**ENTERED**
August 03, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| KAFI, INC. | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | Civil Action No. 3:20-cv-00354 |
| | § | |
| SAND CANYON CORPORATION | § | |
| F/K/A OPTION ONE MORTGAGE | § | |
| CORPORATION, *et al.* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendants' Joint Motion to Dismiss Fourth Amended Complaint. Dkt. 66. Having reviewed the briefing, the record, and the applicable law, and for the reasons explained below, I recommend the Court **GRANT in part** and **DENY in part** the motion.

## I.      FACTUAL BACKGROUND

In this lawsuit, Kafi, Inc. ("Kafi") seeks to avoid foreclosure of a property it owns at 810 Almond Pointe in League City, Texas (the "Property"). In June 2006, non-parties Joe and Kelly Richardson (the "Richardsons") purchased the Property. The transfer was memorialized by general warranty deed with a vendor's lien. The Richardsons financed their purchase with a loan from Sand Canyon Corporation f/k/a Option One Mortgage Corporation ("Sand Canyon"). The loan was secured by a deed of trust in favor of Sand Canyon. The deed of trust contains an optional acceleration clause, allowing Sand Canyon to "invoke the power of sale and/or any other remedies" should the Richardsons default. Dkt. 63-1 at 6.

In January 2012, Sand Canyon purported to assign the deed of trust, along with "all interests secured thereby, all liens, and any rights due or to become due thereon" (the "Assignment"), to Wells Fargo Bank, N.A. ("Wells Fargo"). Dkt. 63-

9. The Assignment was prepared by Nationwide Title Clearing, Inc. ("NTC"), notarized by Miranda Avila ("Avila"), and purportedly executed on behalf of Sand Canyon by Derrick White ("White") in his professed capacity as Sand Canyon's Vice President.[1] It is undisputed that, at the time of the Assignment, White and Avila were employees of NTC. *See* Dkt. 66 at 3. As discussed in greater detail in the following sections, the central issue in this case is Kafi's allegation that White's and Avila's signatures are forgeries.

By September 2012, the Richardsons were in default. Although the Property was noticed for sale multiple times, for reasons not explained, it was never sold at foreclosure. Kafi has attached to its pleadings four notices of trustee's sales:

| Date of Notice | Date of Sale |
|---|---|
| September 5, 2012 | October 2, 2012 |
| November 6, 2012 | December 4, 2012 |
| June 19, 2017[2] | August 1, 2017 |
| February 24, 2020 | May 5, 2020 |

Kafi alleges that two of the notices—dated September 5 and November 6, 2012—were mailed to the Richardsons and filed in the real property records, thereby "unequivocally accelerat[ing]" the loan. Dkt. 63 at 14.

In September 2020, Kafi purchased the Property "as-is" from the Richardsons by general warranty deed, which provides, in relevant part:

---

[1] Kafi's Fourth Amended Complaint alleges that White executed the Assignment as "an 'Assistant Secretary' for" Mortgage Electronic Registration Systems, Inc. Dkt. 63 at 5–6. However, the Assignment identifies White as Sand Canyon's Vice President. *See* Dkt. 63-9. Whatever the case may be, the capacity in which White executed the Assignment has no bearing on my decision.

[2] The June 2017 notice of sale identifies Ocwen Loan Servicing, LLC ("Ocwen") as the Richardsons loan servicer. Dkt. 63-7 at 2. Kafi alleges Ocwen merged with PHH Mortgage Corporation in 2019, and that "PHH now claims to be the [loan's] mortgage servicer." Dkt. 63 at 9.

> This conveyance is made subject-to any outstanding liens of record. Grantors understand that Grantee is in no way assuming or promising to pay any outstanding liens of record.

Dkt. 63-3 at 1–2. There is no allegation that Defendants have attempted to foreclose on the Property.

## II.    PROCEDURAL HISTORY

In October 2020, Kafi sued Defendants in Texas state court, seeking, among other things, a declaration that Defendants lack standing to foreclose and a judgment quieting title to the Property. Defendants timely removed the case to this Court on the basis of diversity jurisdiction.

Kafi has since amended its complaint multiple times. In its live pleadings, Kafi requests a bevy of declaratory relief concerning its alleged title to the Property,[3] the most relevant of which are its requests for declaratory judgments that: (1) the Assignment is a forgery and, therefore, void; and (2) the four-year limitations period to foreclose on the Property has expired. Kafi also brings claims to quiet title or, in the alternative, for the equitable right of redemption. *See* Dkt. 63 at 10–11, 16–17. Finally, against Sand Canyon and NTC, Kafi asserts common-law claims for "forgery." *See id.* at 12–13.

In December 2021, I granted Kafi's request to conduct limited, targeted discovery to develop facts supporting its forgery allegation. Specifically, I allowed Kafi to depose Avila and send written discovery to Sand Canyon and NTC. *See* Dkt. 57. In January 2022, I denied Kafi's request to depose White. *See* Dkt. 60. After

---

[3] Specifically, Kafi seeks the following declarations that: (1) Defendants lack "legal or contractual" standing to conduct a foreclosure sale; (2) the Assignment is void as a forgery; (3) the Assignment is void because Sand Canyon had no right, title, or interest in the mortgage on the date of the Assignment; (4) the Assignment is void because it violates the public policy favoring identification of lienholders and avoidance of "secret liens"; (5) there is no complete and unbroken chain of assignments and transfers of the deed of trust or mortgage documents from Sand Canyon to any of the other Defendants; (6) not all assignments and transfers of the mortgage were properly recorded in the public record, in violation of TEX. LOC. GOV'T CODE § 192.007; (7) the deed of trust is null and void; and (8) the limitations period to foreclose has expired. Dkt. 63 at 10, 13–15.

completing its court-approved discovery, Kafi amended its complaint for a fourth time in February 2022. In support of the allegations mentioned above, Kafi's Fourth Amended Complaint includes over a dozen exhibits, most of which pertain to its claim that the Assignment is a forgery. I discuss the relevant exhibits later in the opinion, but it is worth mentioning upfront that one of the exhibits is a "Forensic Document Examination Preliminary Report," prepared by two forensic document examiners who analyzed dozens of White's and Avila's known signatures and compared them to the supposed forgeries. *See* Dkt. 63-14.

Defendants have jointly moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), arguing that Kafi's forgery claim is time-barred, as are Kafi's claims for declaratory relief based on the alleged forgery. *See* Dkt. 66 at 6–11. Even if the statute of limitations does not torpedo Kafi's claims, Defendants aver that Kafi has failed to sufficiently plead a claim for any of the relief sought. Sand Canyon and NTC further argue that they must be dismissed from the case, irrespective of whether Kafi has adequately pleaded a claim for relief, because they claim no interest in the underlying loan or Property. *See id.* at 29–30.

Kafi advances a handful of interrelated arguments in response, the most relevant of which are: (1) the Assignment is a forgery and, therefore, void *ab initio*—meaning Defendants lack standing to enforce the underlying deed of trust; (2) foreclosure is time-barred under Texas' four-year statute of limitations for real-property actions, *see* TEX. CIV. PRAC. & REM. CODE § 16.035(d); and (3) even if the Assignment was valid and foreclosure not time-barred, Kafi is entitled to equitably redeem the Property by paying off the loan's balance to the current mortgagee, Wells Fargo, or the current loan servicer, PHH.

### III.   LEGAL STANDARD

#### A.   RULE 12(b)(6) MOTION TO DISMISS

Rule 12(b)(6) provides that a district court must dismiss a complaint that fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). This rule is read in conjunction with the pleading standard set forth in Rule 8(a),

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive dismissal at this early stage, the complaint must state enough facts such that the claim to relief is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads enough facts to allow the district court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint "does not need detailed factual allegations" to survive Rule 12(b)(6), a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, I must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 701 (5th Cir. 2017). I also must limit my inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Here, all documents discussed in this opinion are both attached to and incorporated in Kafi's Fourth Amended Complaint.

The Fifth Circuit has repeatedly held that "[m]otions to dismiss are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). Given my charge to liberally construe the complaint in the light most favorable to the plaintiff, with every doubt resolved in the plaintiff's favor, dismissal is proper only if it "appear[s] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

## B.   RULE 9(b)'S HEIGHTENED PLEADING STANDARD

Rule 9(b) imposes a heightened pleading standard for claims of fraud. Forgery is a type of fraud, and, therefore, Rule 9(b)'s heightened pleading standard applies. *See Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 360 (5th Cir. 2017) (analyzing forgery allegations under Rule 9(b)'s heightened pleading standard).

*See also Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.").

Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Elecs. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (cleaned up). Generally, Rule 9(b) requires that a complaint detail "the who, what, when, and where before access to the discovery process is granted." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (cleaned up). However, the Fifth Circuit has acknowledged that there is "no single construction of Rule 9(b) that applies in all contexts," *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009), and that "Rule 9(b)'s ultimate meaning is context-specific." *Williams v. WMX Techs.*, 112 F.3d 175, 178 (5th Cir. 1997).

Relatedly, "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998) ("Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim."). But the Fifth Circuit has cautioned that "this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quotation omitted). That is, "even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief." *Id.*

## C.   DIVERSITY JURISDICTION

Because jurisdiction is based on diversity of citizenship, Texas substantive law and federal procedural law apply to Kafi's claims. *See Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015).

# IV.   ANALYSIS

## A.   BECAUSE A FORGED SIGNATURE IS THE TYPE OF INJURY THAT IS INHERENTLY UNDISCOVERABLE, THE DISCOVERY RULE APPLIES

It is undisputed that the Assignment was filed in the real property records of Galveston County on January 18, 2012. Defendants insist that subsequent purchasers of real property, like Kafi, are charged with constructive notice of any title defects that could have been discovered through a reasonably diligent inspection of the public record. Defendants thus contend that Kafi's forgery claim accrued on January 18, 2012. Because Kafi did not file the underlying lawsuit until October 2020, Defendants argue that Kafi's forgery claim is time-barred under Texas's four-year statute of limitations for real-property actions. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004(a)(4), 16.051. Kafi counters that any claim based on the purportedly forged Assignment did not accrue until it acquired an interest in the Property or, alternatively, the discovery rule deferred accrual of its claim because its injury is the type of injury that is inherently undiscoverable.

A cause of action generally accrues when a wrongful act causes some legal injury, regardless of when the plaintiff learns of such injury. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990). "The discovery rule represents an exception to this general rule of accrual." *Id.* It applies when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). When the discovery rule applies, the cause of action does not accrue, and, consequently, the limitations period does not begin to run until the plaintiff knows or, through the exercise of reasonable diligence, should know of the facts giving rise to the cause of action. *See Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001).

In Defendants' minds, "had Kafi owned the Property in 2012, *before* the supposedly fraudulent assignment was filed," the discovery rule would save Kafi's claim because property owners do not have a duty to continuously search the public record to ensure that no fraudulent instruments are subsequently recorded against their property. Dkt. 66 at 8. However, because "Kafi purchased the Property from the borrowers nearly nine (9) years *after* the allegedly forged assignment was executed and recorded," Defendants argue that Kafi is charged with "constructive notice [of the allegedly forged Assignment] for limitations purposes." *Id.* (quotation omitted).

Although Texas law may charge a buyer "with constructive notice of the actual knowledge that could have been acquired by examining the public records," *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981), this includes only "knowledge of all facts that reasonable inquiry would have disclosed." *Holmes v. P.K. Pipe & Tubing, Inc.*, 856 S.W.2d 530, 542 (Tex. App.—Houston [1st Dist.] 1993, no writ). At the time of its purchase, Kafi was placed on notice of the Assignment itself. Nothing on the face of the Assignment—nor anything else in the public record— should have alerted Kafi that White's or Avila's signatures are possible forgeries. To hold otherwise would be nothing short of demanding Kafi exercise clairvoyance. This far exceeds the concept of "reasonable diligence" required under Texas law. *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 60–61 (Tex. 2015) (holding where fraudulent information "taints the public record," the question of whether a property owner exercised "reasonable diligence remains a fact question" for the jury to decide);[4] *Mooney*, 622 S.W.2d at 85 ("When evidence of fraud may be disclosed by examination of public records . . . limitations will begin to run from

_____

[4] *Hooks* concerned the fraudulent-concealment doctrine. Although the discovery rule and fraudulent-concealment doctrine are separate tolling doctrines that are "characterized by different substantive and procedural rules*,*" *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996), "cases discussing fraudulent concealment are relevant to the meaning of reasonable diligence" under the discovery rule. *Hooks*, 457 S.W.3d at 58 n.9.

the time the fraud could have been discovered by the exercise of ordinary diligence.").

At this point in the litigation, one can only speculate on when Kafi learned of the supposed forgery. Under Texas law, where a plaintiff pleads the discovery rule, the defendant bears the burden of conclusively negating its application before dismissal is appropriate. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) ("the defendant must . . . negate the discovery rule, if it applies and has been pleaded or otherwise raised"); *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996) ("If the nonmovant asserts that a tolling provision applies, the movant must conclusively negate the tolling provision's application to show his entitlement to summary judgment.").

Right now, any theory that Kafi knew or should have known of the forgery more than four years before filing suit is just that—a theory without factual support. For Rule 12(b)(6) purposes, I conclude that Kafi has sufficiently invoked the discovery rule, permitting it to proceed for the time being. However, at trial, Kafi, as "[t]he party seeking to benefit from the discovery rule must also bear the burden of proving and securing favorable findings thereon." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

## B. FORGERY

### 1. *Pleading Requirements for Kafi's Forgery Allegation*

Although the parties agree that Rule 9(b)'s heightened pleading standard controls Kafi's forgery claim, they differ over how stringently it must be applied.

Rule 11(b)(3) of the Federal Rules of Civil Procedure allows a party to plead factual allegations that lack evidentiary support if it appears that they are "likely [to] have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b)(3). Kafi contends that Rule 9(b)'s heightened pleading standard should be relaxed in this case because the facts in question are peculiarly within Defendants' knowledge. Regardless, Kafi insists that its Fourth Amended Complaint demonstrates its belief that White's signature is a

forgery is well-grounded. Understandably, Defendants disagree. They argue, "Kafi's forgery allegations are purely speculative and fail to meet [Rule 9(b)'s] stringent pleading requirements." Dkt. 66 at 16.

Rule 9(b) does not require omniscience. As mentioned, the Fifth Circuit has held that "[i]f the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief." *Tuchman*, 14 F.3d at 1068. *Cf., ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 354 (5th Cir. 2002) ("[T]he plaintiffs need not allege all facts that may be related to their claims, since such a requirement is impossible at the pleading stage because, in nearly every securities fraud case, only the defendants know all the facts related to the alleged fraud." (quotations omitted)).

That said, the Fifth Circuit warned that relaxation of Rule 9(b)'s requirements "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Tuchman*, 14 F.3d at 1068. That is, "while Rule 11(b)(3) may relax Rule 9(b)'s particularity requirement, it cannot be construed to eviscerate that requirement in its entirety by permitting rank speculation." *Moon v. Harrison Piping Supply*, 375 F. Supp. 2d 577, 593 (E.D. Mich. 2005), *rev'd in part on other grounds*, 465 F.3d 719 (6th Cir. 2006). So, even under a non-restrictive application of the rule where allegations are based on information and belief, "the complaint must set forth a factual basis for such belief." *U.S. ex rel. Thompson*, 125 F.3d at 903. *See also Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("[A] complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

> As one leading authority explains:
>
> Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b), *unless accompanied by a statement of the facts upon which the pleader's belief is founded or by allegations that the necessary information lies within the defendant's control.*

5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (4th ed.) (emphasis added).

The prima facie elements of the claim will assist in determining whether the plaintiff has satisfied a relaxed application of Rule 9(b)'s "time, place, contents, and identity" standard. *See Wagemann v. Dr.'s Hosp. of Slidell, LLC*, No. CIV.A. 09-3506, 2010 WL 3168087, at *3 (E.D. La. Aug. 6, 2010). Put differently, the degree of particularity required is guided by the nature of the claim. *See U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 819 (E.D. Tex. 2008) ("Just as the particularity requirements of Rule 9(b) are depend[e]nt on the facts of the case, they are also depend[e]nt on Rule 8.").

In sum, to satisfy Rule 9(b)'s heightened pleading requirement, Kafi must convince me that there is a reasonable basis for its belief that White's and Avila's signatures are forgeries and that evidentiary support will be forthcoming should the case proceed.

### 2. *Kafi's Forgery Allegations*

Keeping in mind that a plaintiff must plead specific facts and not mere conclusory allegations, but accepting as true the well-pleaded factual allegations of the complaint and reasonable inferences to be drawn from them, I turn to Kafi's Fourth Amended Complaint.

Below are the allegations that Kafi has "allege[d] upon information [are] reasonably likely to be discovered," *see* Dkt. 63 at 6, 12–13:

- "[T]he signature of Derrick White was not signed or affixed by Derrick White nor was the signature signed or affixed by someone else" with White's knowledge and authority. *Id.* at 6.

- "[T]he signature [of] Miranda Avila was not signed or affixed by Miranda Avila nor was the signature signed or affixed by someone else" with Avila's knowledge or authority. *Id.*

- "Sand Canyon and NTC altered, made, completed, executed, and authenticated the 2012 Assignment so that it purported to be signed by Derrick White and [notarized by] Miranda Avila when in

fact Derrick White and Miranda Avila did not sign and did not authorize anyone else to sign for them." *Id.* at 12.

- "Sand Canyon and NTC issued, transferred, [possessed], registered, passed off, and published the 2012 assignment when it purported to be signed by Derrick White and Miranda Avila." *Id.* at 12–13.

### 3. The Basis for Kafi's Belief That White's Signature Is a Forgery

Kafi's Fourth Amended Complaint includes a handful of exhibits that it claims demonstrate a reasonable basis for its belief that the Assignment is a forgery. I will address the relevant exhibits, in turn.

#### i. Osceola County, Florida Records Audit

The first is a 2014 property records audit performed in Osceola County, Florida,[5] which identifies four property transactions where White, as an "alleged NTC employee," executed unrelated assignments in which he misrepresented his capacity to do so "as Assistant Secretary of MERS" on behalf of several now-defunct corporations. Dkt. 63-10 at 121–22.

Kafi relies on the Osceola County records audit to cast general aspersions on NTC's business practices. *See* Dkt. 63 at 6–7. Buried within the 332-page document are allegations brought by the Illinois Attorney General that implicate NTC in a "robosigning" scheme. *See* Dkt. 63-10 at 111. Ostensibly relevant here is an allegation that "[d]ocuments generated by NTC were . . . signed by NTC employees who had no personal knowledge of the facts they were attesting to." *Id.* The records audit also describes NTC as "a known document manufacturing plant," engaged in a pattern of recording documents that were prepared but not executed by NTC employees. *Id.* at 109–12.

The report itself is replete with conclusory allegations. United States District Judge Gray Miller found the same records audit less than useful when considering a similar forgery allegation. *See Reed v. Bank of Am., N.A.*, No. CV H-15-2005,

---

[5] The 332-page records audit is part one of a two-part forensic examination of Osceola County, Florida's real property and circuit court records.

2016 WL 3058303, at *4 (S.D. Tex. May 31, 2016) ("Even considering the report, it simply makes the conclusory statement that Martha Munoz is a 'known Bank of America robosigner.' The report offers no support for this allegation. Moreover, the report is no evidence that the assignments at issue in this case were forged." (internal citation omitted)).

But even if I were to accept the allegations contained within the records audit as the gospel truth, they are not the silver bullet Kafi believes them to be. That is, the records audit does not lend support to Kafi's theory that White's signature is a forgery. If anything, it tilts the scales in the opposite direction, suggesting that White personally signed the Assignment but misrepresented his capacity to do so as Sand Canyon's Vice President.

Under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable." *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 226 (5th Cir. 2013). This is significant because, under Texas law, a non-party to a mortgage assignment (i.e., homeowner) may only challenge the assignment on grounds that would render it void, not merely voidable. *See EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("When the homeowner is just a third party to an assignment, the homeowner lacks standing to challenge the assignment on grounds that would merely render the assignment voidable."). Here, Kafi's standing to challenge the Assignment hinges on the fact that "[a] forged deed is void" under Texas law. *Vazquez v. Deutsche Bank Nat'l Tr. Co., N.A.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Said differently, allegations of White's supposed nefarious conduct found in the records audit are not comparable to the allegations made by Kafi in this case and do not provide a reasonable basis for its forgery allegations.

### ii.    AOL.com News Article

The second exhibit is an online news article similarly discussing NTC's "problematic" business practice of robosigning mortgage-related documents. Dkt. 63-11. In its briefing, Kafi specifically references an NTC employee mentioned in the article who, according to the article, testified at deposition that he notarized hundreds of documents at a time and, on occasion, signed documents as a vice president of various financial institutions. *See id.* at 3. That same employee, however, also apparently testified that he was unaware whether other NTC employees did the same. *See id.*

Cutting to the chase, the article makes no mention of White, Avila, or the Assignment at issue. Like the records audit, the article's general allegations regarding NTC's supposed business practices do nothing to demonstrate a reasonable basis for Kafi's forgery allegations in this case.

### iii.    Forensic Document Examination Preliminary Report

The third exhibit is the aforementioned "Forensic Document Examination Preliminary Report," prepared by forensic document examiners Dale Stobaugh ("Stobaugh") and Kenneth Crawford ("Crawford"), both of whom analyzed dozens of White's and Avila's "known signatures" and compared them to the supposed forgeries. *See* Dkt. 63-14. The report begins with the caveat, "[d]ue to the lack of detail and possible misinterpretation of foreign matter reflected in copies [of signatures], it is usually our policy not to base definite identification or elimination by handwriting comparison on any type of reproduction," and includes a disclaimer that ink originals of the known signatures "could provide a basis for a more definite determination." *Id.* at 1–2. Nonetheless, the report cites "consistent differences" between the known signatures and supposed forgeries before concluding that these inconsistencies "indicat[e]" White and Avila did not author their respective signatures on the Assignment. *Id.* at 2.

### iv.    Avila's Deposition Testimony

Avila testified her signature on the Assignment is authentic and that White signed the Assignment in front of her. *See* Dkt. 66-1 at 5–6. However, upon cross-examination, Avila conceded that she did not specifically remember White signing "this particular assignment" but could not recall an instance where she notarized a document where the signer was not in her presence. *Id.* at 6–7.

Predictably, the parties' view of Avila's testimony is considerably different. Defendants would have me look at Avila's seemingly unequivocal statement that White "signed [the Assignment] in front of [her]." *Id.* at 6. While Kafi emphasizes that Avila walked back her testimony, admitting she did not recall White signing the Assignment in question. *See id.* at 6–7 (Q: [A]re you saying that you specifically recall that this particular assignment from January 5, 2012, that you have specific recollection that [White] signed this in front of you?" A: "I don't remember specifically that day, but we sign in front of each other all the time.").

### *4.  Kafi Has Pleaded Forgery with Sufficient Particularity*

Defendants' flagship argument is that "the Fifth Circuit has repeatedly held that these types of signature comparison are insufficient to state a [forgery] claim." *Id.* at 14 (citing *Bynane v. Bank of N.Y. Mellon*, 866 F.3d 351, 360 (5th Cir. 2017) and *Kreway v. Countrywide Bank*, 647 F. App'x 437, 437–38 (5th Cir. 2016)).

The short of it is that the Fifth Circuit has never decided a case like this. In both *Bynane* and *Kreway*, the plaintiff's forgery allegations were premised solely on the plaintiff's own deduction that the assignment was a forgery because, according to the plaintiff, the signature on the assignment in question differed from the signer's signature on other unrelated assignments, which the plaintiff had attached to the complaint for the court to compare. *See Bynane*, 866 F.3d at 361; *Kreway*, 647 F. App'x at 438.

This case might have started out as a *Bynane* or *Kreway*-type signature-comparison case, but Kafi amended its pleadings and dropped the signature-comparison argument altogether. Now, Kafi's allegations chiefly rely on the

15

preliminary forensic document examination report. Stobaugh and Crawford—professional forensic document examiners—compared dozens of versions of White's and Avila's "known signatures" that were produced by NTC with the supposed forgeries and found "consistent differences," which they concluded "indicat[e]" that White and Avila "did not write the signature in that name on the [Assignment]." Dkt. 63-14 at 2. While the Fifth Circuit has constructed an admittedly rigorous test for successfully pleading forgery allegations of this type, the preliminary report distinguishes Kafi's allegations from those made in *Bynane* and *Kreway*. Viewed in the light most favorable to Kafi, I find that the preliminary report demonstrates a reasonable basis for its allegation that the Assignment is a forgery. *See* Dkt. 63 at 6 (alleging that "[t]he forgery allegations . . . in this complaint have evidentiary support and will likely have even more evidentiary support after a reasonable opportunity for further investigation or discovery").

Moreover, if I were to adopt the position Defendants would have me take, it is difficult to envision how a plaintiff in Kafi's shoes could ever surmount Rule 9(b)'s heightened pleading standard. Admittedly, Kafi does not allege who forged the signatures, when the signatures were forged, where the signatures were forged, or how the signatures were forged. However, there is no question that this information is "peculiarly within the opposing party's knowledge." *Tuchman*, 14 F.3d at 1068. To hold otherwise would essentially require Kafi first figure out who (allegedly) forged the signatures (without the benefit of discovery) and then drag them into court to explain when, where, and how they did so. This would be a draconian application of Rule 9(b) where, as here, Kafi has demonstrated a reasonable basis for its belief that the signatures are forgeries. *See U.S. ex rel. Foster*, 587 F. Supp. 2d at 819 ("the particularity requirements of Rule 9(b) are depend[e]nt on the facts of the case"); 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1291 (4th ed.) ("[T]hose portions of Rule 9 that require specific or detailed allegations should not be construed in an unduly strict fashion.").

Courts are intended as places of redress. For this reason, motions to dismiss are generally viewed with disfavor, as they tend to undermine the overarching public policy favoring merits-based disposition. *See Test Masters*, 428 F.3d at 570 ("Motions to dismiss are viewed with disfavor and are rarely granted."); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice and Procedure* § 1356 (3d ed.) ("[A] motion under Federal Rule 12(b)(6) . . . is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case."). Because I find that *Bynane* and *Kreway* are not binding on the facts of this case, I recommend the Court deny Defendants' motion to dismiss Kafi's claims for declaratory relief based on the supposed forgery and decide the merits of Kafi's forgery allegations at summary judgment or at trial. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 72 (1st Cir. 2014) ("[A] primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process because, based on the factual scenario on which the case rests, *the plaintiff could never win*." (emphasis added)).

## C.  TEXAS LAW DOES NOT RECOGNIZE FORGERY AS AN INDEPENDENT CIVIL CAUSE OF ACTION

In addition to seeking a declaratory judgment that the Assignment is a forgery, Kafi has pleaded an independent "forgery" cause of action against Sand Canyon and NTC. Thus, I must address whether "forgery" is a recognized civil claim under Texas law and, if so, whether Kafi has sufficiently pleaded such a claim. *See Breitling v. LNV Corp.*, No. CV 3:15-CV-0703-B, 2015 WL 5896131, at *8 (N.D. Tex. Oct. 5, 2015) (observing that whether forgery qualifies as a tort under Texas "is unclear" and collecting conflicting authority).

Kafi's Fourth Amended Complaint cites a single state-court decision in support of its position that a common-law claim of forgery exists under Texas law, *Saxer v. Nash Phillips-Corpus Co. Real Estate*, 678 S.W.2d 736 (Tex. App.—Tyler 1984, writ ref'd n.r.e.). In that case, the court of appeals wrote as follows: "Forgery

is an unlawful and unconscionable act for which a common law court may provide a civil remedy independent of the remedies provided by [the Deceptive Trade Practices Act]." *Id.* at 739 (footnote omitted). Critically, following the phrase "unconscionable act," the court included a footnote citation to Texas Penal Code § 32.21, which codifies forgery as a criminal offense. *See id.* at 739 n.2.

As United States District Judge Sim Lake aptly pointed out, "in order for a private right of action to exist under a criminal statute, there must be a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 699 (S.D. Tex.) (cleaned up), *aff'd*, 582 F. App'x 279 (5th Cir. 2014). What's more, *Van Duzer* considered the very question before me now—whether a private cause of action for "forgery" exists under Texas law. *See id.* In deciding that no such civil claim exists, Judge Lake explained: "Plaintiffs have not provided any statutory basis for inferring that they are entitled to bring a private cause of action on the basis of any criminal statute. Thus, any attempt by Plaintiffs to assert a cause of action under a criminal statute fails as a matter of law." *Id.*

Much like the plaintiff in *Van Duzer*, Kafi's forgery allegations track the language found in the Texas Penal Code—though Kafi does not cite to the Penal Code itself. *Compare* Dkt. 63 at 12–13, *with* Tex. Penal Code § 32.21(a)–(b). Kafi cannot create a civil cause of action simply by parroting the Texas Penal Code. Because there is no statutory basis for me to infer that Texas law recognizes a civil cause of action for violating the criminal forgery statute, I find that forgery is not a cognizable, stand-alone civil claim under Texas law. *See Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013) (dismissing a forgery claim "to the extent it was asserted as any kind of freestanding cause of action"). Accordingly, I recommend the Court dismiss Kafi's forgery claims against Sand Canyon and NTC with prejudice.

### D.   STATUTE OF LIMITATIONS

Defendants label Kafi's claim for declaratory relief based on the expiration of the statute of limitations to foreclose on the Property as "nothing more than speculation," arguing that Kafi has pleaded no facts to support its allegations that the notices of trustee's sale[6] were ever mailed to the Richardsons or that the notices were proceeded by a notice of intent to accelerate. Dkt. 66 at 25–26.

Under Texas law, a suit for the foreclosure of a real property lien must be brought within four years of the maturity date of the last installment of an obligation payable in installments. TEX. CIV. PRAC. & REM. CODE §§ 16.035(a), (e). However, default alone does not automatically start the limitations clock. If a note or deed of trust secured by real property contains an optional acceleration clause— as in this case—"the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

Effective acceleration requires two acts: (1) notice of intent to accelerate; and (2) notice of acceleration. *See id.* Both notices must be "clear and unequivocal," *Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 893 (Tex. 1991), and notice of acceleration is ineffective unless preceded by proper notice of intent to accelerate. *See Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 234 (Tex. 1982).

Kafi has sufficiently pleaded facts to assert a plausible claim that the statute of limitations to foreclose on the Property has expired. Kafi alleges that the debt was accelerated—and, therefore, the limitations period to bring a foreclosure action began—on September 5, 2012, when "notice of foreclosure sale was filed in

---

[6] Defendants cite a decision out of the Houston Division for the proposition that I should dismiss Kafi's limitations claim because nothing in the record indicates the Richardsons actually received the notices of trustee's sale. *See* Dkt. 66 at 25–26 (citing *Ther & Co. v. U.S. Bank, N.A.*, No. CV H-18-2916, 2019 WL 5684226, at *3 n.1 (S.D. Tex. Oct. 31, 2019)). Critically, *Ther* was decided at summary judgment. In contrast, Rule 8's liberal pleading standard does not require that a plaintiff produce evidence supporting the facts alleged; "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support what is alleged. *Twombly*, 550 U.S. at 556.

the real property records and mailed to the Richardsons," or, in the alternative, "on November 6, 2012, when another notice of foreclosure sale was filed in the real property records and mailed to the Richardsons." Dkt. 63 at 14. Kafi further alleges the notices were "preceded by an unequivocal notice of intent to accelerate," though Kafi cabins this allegation by pleading it "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* at 15. Accepting these facts as true for the purposes of the motion to dismiss, I find that Kafi has sufficiently pleaded the expiration of the statute of limitations to foreclose.

Accordingly, I recommend the Court deny Defendants' motion to dismiss Kafi's claim for declaratory relief based on the expiration of the statute of limitations to foreclose on the Property. *See e.g.*, *Kafi, Inc. v. Deutsche Bank Nat'l Tr. Co.*, No. CV H-20-3247, 2021 WL 5143309, at \*4 (S.D. Tex. Oct. 5, 2021) (recommending the same result under near-identical circumstances).

### E.   QUIET TITLE

Under Texas law, an action to quiet title—also known as a suit to remove cloud from title—is one in which a superior title holder seeks to remove a challenge to that title. *See Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "An action to remove a cloud from title exists to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of a better right." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quotation omitted). In a suit to remove a cloud from his title, the plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief. *See Lance v. Robinson*, 543 S.W.3d 723, 739 (Tex. 2018). "That is, the plaintiff must prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to

see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove." *Hahn*, 321 S.W.3d at 531. "The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.–Houston [1st Dist.] 2012, pet. denied).

The elements of a claim for relief to quiet title are: (1) a valid equitable interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) although facially valid, the defendant's claim is invalid or unenforceable. *See id.* To prevail, the plaintiff must demonstrate that she has superior title to the property at issue. *See id.*

Here, there is no question that Kafi has an interest in the Property. Moreover, Wells Fargo's claim of a right to foreclose and thereby transfer legal title to the Property constitutes a cloud on Kafi's title. *E.g.*, *Morales v. Wells Fargo Bank, N.A.*, No. SA-13-CV-410-XR, 2013 WL 6057853, at *6 (W.D. Tex. Nov. 14, 2013). *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("Foreclosure transfers title . . . to another party"). As for the third element, either of Kafi's two principal arguments—forgery[7] or limitations[8]—if proven, would demonstrate Wells Fargo's

---

[7] "A void contract of assignment confers no right to foreclose under the deed on the purported assignee[.]" *Puente v. CitiMortgage, Inc.*, No. 3:11-CV-2509-N, 2012 WL 4335997, at *6 n.14 (N.D. Tex. Aug. 29, 2012) (applying Texas law). *See Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) ("Any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner.").

[8] "It is established law in Texas that, when a debt is barred, an action to foreclose a lien or mortgage given as security for it is barred also." *Dupree v. Mansur*, 214 U.S. 161, 166 (1909). *See Wolf*, 44 S.W.3d at 567 ("Under state law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." (internal citations omitted)).

claimed interest in the Property is invalid or unenforceable, and that Kafi has a superior title.

For these reasons, I find that Kafi has alleged facts that, if true, would permit it to recover on the strength of its own title and has demonstrated the existence of a potentially invalid charge against that title. Accordingly, I recommend the Court deny Defendants' motion to dismiss Kafi's claim to quiet title to the Property without prejudice to re-urging the issue at summary judgment.

## F.    EQUITABLE RIGHT OF REDEMPTION

In the alternative, Kafi has also pleaded a claim for equitable redemption. A right of redemption is the right to redeem the property subject to foreclosure within a reasonable time of default by paying off the full amount owed on the mortgage. *See Scott v. Dorothy B. Schneider Estate Tr.*, 783 S.W.2d 26, 28 (Tex. App.—Austin, 1990 no writ). In order to state a claim for equitable redemption, a plaintiff must allege: (1) it has a legal or equitable interest in the property subject to the mortgage; (2) it is ready, able, or willing to redeem the property in question by paying off the amount of the liens to which the property is subject; and (3) that the equity of redemption was asserted before a foreclosure sale occurred. *See id.*

Kafi's alleged right to equitable redemption is based on its allegations that: (1) it is the "legal owner of the Property"; (2) it "would suffer a loss of ownership and the right to possession and control of the Property if Wells Fargo and PHH are allowed to foreclose"; and (3) it "is ready, able or willing to redeem the Property . . . by paying off the amount of any *valid and subsisting* liens to which the Property is subject." Dkt. 63 at 17. Regarding the latter, Kafi pleads that it has a net worth of $7 million, which dwarfs the loan's principal amount ($260,248), and would "pay any *valid and subsisting* liens in cash." *Id.* Finally, Kafi represents that the current amount owed under the loan agreement is unknown and subject to discovery. *See id.*

Defendants maintain that Kafi has failed to sufficiently plead a claim for equitable redemption because it has not tendered all amounts due on the

underlying note. *See Owens v. Bank of Am., NA*, No. CIV.A. H-11-2552, 2012 WL 912721, at \*3 (S.D. Tex. Mar. 16, 2012) ("Thus, within the context of the plaintiffs' equitable redemption claim, the plaintiffs must tender the redemption amount (including the full amount of the defendant's lien) either to the defendant or the Court.").

Simply pleading willingness and the ability to pay the amount owed has been rejected by just about every court to consider the issue. Nonetheless, some courts have decided that alleging facts that adequately explain the plaintiff's ability to pay off the amount owed on the subject property is sufficient to survive a motion to dismiss. *Compare, DBDFW 3 LLC v. JPMorgan Chase Bank, N.A.*, No. 3:18-CV-3148-C-BN, 2019 WL 823810, at \*8 (N.D. Tex. Feb. 6, 2019) ("Stating that the plaintiff is willing to satisfy the lien is insufficient to state a claim for equitable redemption. The plaintiff must provide additional details such as the value of the lien, how it would pay, its own net worth or assets, or any other information from which the court could infer that plaintiff's right to relief is plausible."), *with 330 Cedron Tr. v. Citimortgage, Inc.*, No. SA-14-CV-933-XR, 2015 WL 1566058, at \*3 (W.D. Tex. Apr. 8, 2015) ("Cedron offers no facts in its complaint that demonstrate it is [] 'ready, willing, and able' to pay off the amount of the existing liens to which the Property is subject . . . . Cedron offers no facts about the value of such lien, how it would pay, its own net worth or assets, etc. The conclusory statement that merely recites an element of the cause of action is not enough to raise the right to relief above a purely speculative level.").

Here, Kafi has pleaded that it is ready, willing, and able to pay off "any *valid and subsisting* liens to which the Property is subject." Dkt. 63 at 17. Standing alone, this would be insufficient. But Kafi has also pleaded that "it has a net worth of $7 million and would pay any *valid and subsisting* liens in cash." *Id.* Moreover, although Kafi offers no facts about the amount due, it does include the loan's principal amount: $260,248. Given that Kafi claims a net worth of $7 million, Kafi

has sufficiently alleged that it has the assets to pay off whatever remains on the loan.

In my mind, these extra allegations nudge Kafi's equitable redemption claim above a purely speculative level. *See Green for 2016 Wolf Tr. v. Bank of Am., N.A.*, No. CV H-17-0772, 2017 WL 1424332, at *2 (S.D. Tex. Apr. 20, 2017) ("Plaintiff has plead sufficient facts to state a claim for its equitable right of redemption that is plausible on its face."); *id.* ("Although the cases on which Defendant relies correctly identify tender of the amount owed as a condition precedent to recovery of title, tender is not required in order to state a legally cognizable claim." (quotation omitted)).

## G. KAFI CANNOT OBTAIN ANY RELIEF FROM NTC OR SAND CANYON BECAUSE NEITHER PARTY CLAIMS A CURRENT INTEREST IN THE MORTGAGE

It is undisputed that PHH is the current loan servicer, and, since 2012, Wells Fargo has been the assignee of record of the deed of trust. There are no allegations that Sand Canyon has a current interest in the loan or deed of trust, nor are there any allegations that NTC has ever claimed such an interest. Moreover, there are no allegations that Sand Canyon or NTC is attempting to foreclose on the Property. Thus, even if Kafi ultimately succeeds on any of its claims for declaratory relief, it could not obtain any of the requested relief from NTC or Sand Canyon. Accordingly, I recommend the Court dismiss Kafi's claims against Sand Canyon and NTC.

## H. KAFI'S CLAIMS FOR EXEMPLARY DAMAGES

Kafi alleges that Defendants' conduct in making, presenting, or using the Assignment and the post-2008 notices of sale constitute fraud, malice, or gross negligence, entitling Kafi to exemplary and punitive damages. *See* Dkt. 63 at 18 (citing TEX. CIV. PRAC. & REM. CODE § 41.003(a)).

An independent tort must be separately pleaded and proved to recover exemplary damages. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981) (holding that exemplary damages were "not recoverable because the

24

[Appellees] failed to plead and prove a tort allowing recovery of exemplary damages"); *Sharpe v. Kilcoyne*, 962 S.W.2d 697, 703 n.5 (Tex. App.—Fort Worth 1998, no pet.) ("To support an award of exemplary damages, the plaintiff must prove a 'distinct' tortious injury with actual damages arising from that injury."). Because Kafi's forgery allegations live on only through its requests for declaratory relief, it is unable to obtain exemplary damages. Accordingly, I recommend the Court dismiss Kafi's request for exemplary damages.

## CONCLUSION

For the above reasons, I recommend that the Court **GRANT in part** and **DENY in part** Defendants' Joint Motion to Dismiss (Dkt. 66). Specifically, I recommend the Court dismiss (1) Kafi's civil forgery claim against all Defendants; (2) Kafi's claim for exemplary damages; and (3) all claims against NTC and Sand Canyon. All other requested relief is denied without prejudice to re-urging at summary judgment.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 3rd day of August 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE